Case No. 13-2241, Universal Leather v. KORO. Morning, and may it please the Court, I'm Norman Smith from Greensboro. I represent the Appalachian Universal Leather. Until 2009, Universal Leather was a client of Pantan, and I'm using the words now from the Fontella affidavit, an employee allegedly of Pantan. Pantan could no longer keep up this relationship, so it was agreed that KORO would sell the leather to Universal Leather. After August 26th of 2009, all purchase orders came from Universal Leather in High Point to KORO in Argentina. And I can give appendix references if you need them, but I think they're in the brief. Looking at the Merlot affidavit, and Merlot is a declared agent of Pantan, KORO buys raw hives, pays Pantan and other tanneries to do the finishing work, and then KORO and Pantan agreed that Pantan would facilitate KORO's sale of leather to Universal Leather. That's appendix 69. Fifteen percent of the total shipments came to High Point from Argentina. Fifteen percent? Yes. Others went to different places. If you want some examples, pages A100 and 106 show shipments coming to, it says Greensboro, but it's really High Point. And the balance of them went elsewhere in the U.S., and some went to China. You said there was $5 million worth of purchases? I said that. The other side says it's $2.85 million. I know. Was $5 million in one of your affidavits? Yes, $5 million. Don't we have to take your affidavits as true? Yes, sir. At this point, unless you're going to fix them or something. But in any event, I just want to make it clear. Do you think they may be right on the $2.8? I don't know, but it doesn't matter. Quite a bit of money either way. It's a lot of goods. You said there were 200 transactions? There were 200 shipments in three or four years. In a total of three years. It began in September of 2009. It continued throughout the entire year of 2010. The affidavit from your client is a little fuzzy on when it begins. 2009 or 2010, which one do we take? Your Honor, in the affidavit, I think there's a typographical error about when the visits began. The visits began in April of 2010. There were six visits. The affidavit says visits occurred from 2009 to 2011, and that, I think, is a typo. Because the only evidence about visits is the first visit occurred on April 19 of 2010. But the goods were being sent, invoiced, ordered, paid for, all with the party's universal letter. You combine this letter from Argentina with furniture here in High Point and other places? Yes, that is correct, Your Honor. These are hides that are used in the furniture industry. Okay, so all payments were to Coro from High Point to Argentina. All invoices were to Coro, excuse me, were by Coro in Argentina to Universal Leather in High Point. I'm talking about September of 2009. How did the magistrate judge and the district judge get it wrong then? You've got all these transactions and all this money and extended period of time and everything. I got kind of irritated with the magistrate judge ruling and then the district judge. Don't be irritated about any lower court judges in front of us. Just strike that from your arsenal of arguments. But I wasn't planning to. I was going to say that the district judge properly called me down for being irritated, and I hope I've shown no sign of irritation since. I certainly didn't put anything in my papers in this court that would indicate that. I apologize to the court for whatever I said about the magistrate judge's ruling, but I don't understand the rulings of the court below, and I don't think they follow the decisions of this court and of the Supreme Court. So there were 200 shipments, fall of 2009. So what do you want us to do? Reverse and send back for further proceedings. It seems to me, Mr. Smith, you're not accounting for some things that the district judge and the magistrate judge focused on, and one of them being that the parties provided that the acceptance of the goods would be in Argentina. FOB, Argentina. FOB. So if the goods were accepted in Argentina by your client, then how does it matter that the goods were ultimately shipped in at your client's request to North Carolina? If it pleases Your Honor, I simply cannot imagine that the FOB issue could possibly make a difference unless it were a closed case. I'm just asking you legally why it is not a significant fact in the analysis. I think it is not significant if you have the physical flow of goods with the understanding and expectation of both parties that they're going to continue to come 200 times from Argentina into this country. Wasn't that really done for the convenience of universal leather rather than for any performance of contract reason? I don't think so. If they accepted the goods in Argentina? I don't think it was for our convenience. I cannot imagine why it was. They would have rather... You could have used them in furniture. We would have rather accepted them up here after we'd had a complete inspection of every good. When we were sure that they'd arrived on time and sure these issues wouldn't be arising that were in the underlying litigation, I can't imagine it's for our advantage. But also, Your Honor, except for a couple of stray statements and a couple of cases that Bennett has picked up, I do not find any support for the notion that FOB shipment somehow immunizes the shipper from jurisdiction in this country. Okay, but you didn't have any offices. I mean, there were certainly no offices of Coro in North Carolina. There may have been a dual agent that came, or not may have been. According to your affidavits, somebody came representing the company to North Carolina but was also representing some other company. According to their affidavits, it was a dual agency. They said that Coro took over this activity of Pontan. And it looks like the e-mails, at least the ones that I was able to read through in the record, the e-mails are really pretty much your client's plea for more time in paying its bills. There weren't e-mails exchanged in going into North Carolina discussing the substance of the parties' agreement, or at least that I see in the record, so correct me if there are. The record does not purport to contain a total of all the e-mails. There were weekly e-mails that went back and forth, but all those are not replicated. Why wouldn't you put in the e-mails that are most supportive to your position? Because I thought our position was so abundantly clear. I've never saw a lawyer that thought his position was so clear that he decided not to withhold some evidence. Your Honor, I have not withheld any evidence. It's just that— You were overconfident? I'm sure I was overconfident. But the only thing I put in the record myself was stuff that I thought the court had to see. Do you take the position that we can consider their affidavit? I thought you were taking the position that we had to look at the facts in the light most favorable to you, your affidavit. I am, Your Honor, but I'm saying, you know, they're raising some hearsay issues about my affidavits, and I'm saying— Right, they're raising some issues, but the burden is on you. The question is whether you've made a sufficient showing based on what your allegations of the complaint and your affidavits and what you submitted down below. I'm saying just look at their affidavits, and they create— They take issue. They say these fellows didn't work for Coro and things like that, but I think we have to look at it. I thought we had to look at it in the light that you presented. Didn't the plaintiff's affidavits really raise an inherent credibility issue? Your Honor, I would— Mr. Kachekian, you know, files three affidavits, the third one that's filed late. All of a sudden, aha, he finds a written agreement. He goes through two affidavits where he's stating the relationship with the parties and conveniently admits the fact that there's a written agreement, and then all of a sudden, when it looks like things are going that poorly, he finds one. Doesn't that create a problem? And can't the trial judge take that into consideration? The trial judge said he'd ignore the third affidavit, and I have not focused on it for that very reason because I thought that's within the judge's discretion. You don't appeal that ruling on the third affidavit? No, I do not, but the third affidavit simply set forth a contract which was never signed by the other side. It was signed by us but never signed by the other side. We thought we were operating under it, but there's a further problem with that contract, namely it requires an exclusive dealing, which under North Carolina law can only be in writing as the district judge. Since the judge excludes that, that's not really something before us under review because you're not appealing that. I'm not appealing that. I think it's of some interest, but I don't think it's needed or perhaps even appropriate. Okay, we come clearly within the long-arm statute, the 17545E. I don't think that's really debatable. We've got goods received by a plaintiff in North Carolina through carriers with that regard to where the delivery to the carrier occurred, and we are satisfied that we are comporting with due process requirements because the activities were purposely directed at the residents of the forum as Burger King requires. The activities here were of such long duration and so many times done over and over again and so many separate things done each time, billing, ordering, paying, sending, that we don't have, in the words of ESAB, random, fortuitous, or attenuated connections, nor in the words of tire engineering, casual or isolated transactions. I think the consulting engineers case of this court is probably the high or low watermark, depending on what side of the case you're on, with regard to establishment of personal jurisdiction, and it was, as your honors know, criticized in the tire engineering case and not followed. But anyway... How is your case different from consulting engineers where we said there were insufficient contacts? Yes. In consulting engineers, please, your honor, no products were sent, no services were provided in the forum state. Everything took place in India or Colorado, as the case may be. Well, all the production took place here in Argentina. So you're really relying on the fact that there was a shipment of goods on a continuing basis into North Carolina, notwithstanding the fact that production and the acceptance of the goods took place in Argentina. And I think we really have a case in point that we just can't get away from, and that's the Dallas case, where non-resident dependents' products were sent into North Carolina and sold by a local distributor. The only difference is the local distributor was a non-party, where in this case he's the party plaintiff. Dallas, at D-O-W-L-E-S-S? Yes, your honor. That's Judge Irvin's case. It is indeed, your honor. So in consulting engineers, to finish answering Judge Keenan's question, not only were there no products or services in the forum state, but there were no site visits to the forum state. All they had was e-mails, and the court said e-mails. Okay, now these site visits, from the perspective most favoring you, they didn't have anything to do with the performance of the party's agreement. They simply had to do with establishing the business relationship. Is that correct? Oh, no. The site visits? Pardon? The site visits? Yeah. The site visits to North Carolina by the agents. The site visits, six in number, beginning April 19th of 2010, were not to begin the relationship because that had begun in September of 2009. It was to adjust, continue the relationship, build goodwill, talk about the need for goods, talk about expectations, talk about pricing. In other words, all those things. What affidavit is that in? The Kochekian affidavits make it clear, the first and second Kochekian affidavits. Yeah, is it in the second affidavit? I think that the first and the second I'd have to look, but the first one is the most extensive discussion and then there's some further discussion in the second one. The second one was kind of a rebuttal affidavit. It was more or less a rebuttal and was not repetitive of what had gone into the first. Judge Irvin said you didn't even need any affidavits. Well, that's what he said. 1986 case. But, you know, times change and I see my time is up, speaking of time, so why don't I sit down and you can see, Judge Moss, I haven't trashed anybody yet and I don't plan to do so. Is it enough to say, though, in the affidavit that the discussions of various aspects of the purchaser and seller relationship, that's enough specificity? One would hope. I mean, I could have gone into great detail, but didn't. I think with the evidentiary presumptions, credibility determinations in my favor, the most favorable inferences from all facts that a sort of a brief statement would suffice. Thank you very much. Mr. Brown? May it please the Court. Coro is a small business with a total of seven employees in Argentina. Coro sells leather in Argentina to customers who can do whatever they want that leather once it's acquired in Argentina. Coro has no offices in North Carolina, it has no property in North Carolina, and it does not do business in North Carolina. In a desperate attempt to keep Coro in this North Carolina lawsuit, Mr. Kitchakian has filed multiple affidavits, but those affidavits are plagued with numerous contradictions and inconsistencies. They only filed two affidavits that are here for consideration, right? Yes, Your Honor. The third one he's abandoned. He's conceded is not at issue. And you have filed two or three affidavits? Yes, Your Honor. You can't consider those? No, you can consider those. How can we consider those? We have to look at all this stuff in the light most favorable to them. The jurisdictional question under 12b-2 is one for the judge with the burden on the plaintiff, ultimately to prove the existence of jurisdiction by preponderance. He could rest on the complaint and affidavits alone. His affidavits, the burdens on the plaintiff still make a prima facie showing. In considering a challenge to that record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. That's the law of this circuit. Yes, Your Honor. And I'm not disputing that at all. And that law, you can dispute. That's consistent in all these cases. But, Your Honor, my point is that... And Judge Irvin said, as he mentioned back long ago, you don't even, you can just rely on the complaint. You don't need any affidavits. Well, Your Honor, I think the Dallas decision that he refers to is completely distinguishable because that language is going to... Mere allegations are sufficient to satisfy the requirements. Pleadings may not be verified. That is going... No lack of credibility will be implied by the absence of verification. That aspect of the Dallas decision is going to whether there's been an allegation sufficient to trigger the North Carolina long-arm statute. But going back to your comment, Judge King, there's no question that that is law in the court. But you argue in your brief that those aren't the facts. You argue other facts. You say these fellows didn't say such-and-so when they were up here in North Carolina. This or that didn't go on. You submit affidavits and you argue your own facts. And we came... That's not permissible under all these cases. We have to assume his facts. Now, you have to accept that and then say you win. That's what you have to do under our precedent. You can't, I don't think, unless you get us to change the law of the Fourth Circuit, that you can argue contrary facts. Your Honor... Or lack of credibility. Here, in essence, the plaintiff has a duty to come forward with a prima facie case with regard to the jurisdictional facts. In considering whether the plaintiff has done so, it's perfectly appropriate to consider the affidavits that we submitted. Where, in a case like this, that it's decided on the pleadings, the affidavits that are submitted, yes. This Court's case law is the inferences on disputed facts have to be drawn in favor of the plaintiff. If this were an evidentiary hearing from the district court judge and findings of fact, that obviously would be a different scenario. But here, you have to consider the affidavits that were submitted by Coro. But... How do you win if there isn't a credibility determination? Because the... Because it seems to me that that's really what was going on here. This Kachekian guy was very, you know, appears to have some sketchy aspects of his business background. And the affidavits themselves suggest generalities in many respects. And it really looks like the trial judge was making a credibility assessment as to Mr. Kachekian. Doesn't it? No, I don't think so, Your Honor. Why not? What the trial court was doing was looking at the totality of the factors that this court has directed the district court to do. And the district court concluded that the various points that Mr. Kachekian is trying to make, that those don't alter the analysis. Because you have a situation where it is a contract that's governed by international law, not by North Carolina law. It is a contract where the goods are being purchased in Argentina. Risk of loss and title to those goods pass in Argentina. And under this court's case law, I think it's immaterial where those goods ultimately end up. It's immaterial. It's a factor that you take into account. It's a factor that there are all these goods that came here. I mean, certainly our case is talking about personal jurisdiction when there are no goods going into the state, the forum state. That's a factor to consider. It's a factor to consider that there are six visits, which distinguishes it from the case upon which the magistrate judge and the district court rely. All of your suggestions that there's some sort of hanky-panky or fraud or stretching of the facts might be correct. But like Judge Kachekian, I don't know that we can deal with that right now. Well, Your Honor, I think what's referenced to the six visits, that in and of itself does not give rise to personal jurisdiction. They don't have that in and of itself. They have a bunch of goods coming in. It's true. They were manufactured by your people. They took, it was H-O-B or B-O-E, whatever it is. F-O-B in Argentina. But they're your goods, still and all. It's a factor that it was F-O-B, but it's also a factor that a lot of your goods came in. Well, Your Honor, again. They say there were $5 million worth. You come back and say it's $2.8 million. Either one of those is a lot of money. Well, but even so, that the plaintiff doesn't get to cause jurisdiction to lodge personal jurisdiction in North Carolina because they choose where to send those goods. Just like there's not personal jurisdiction in China because Universal Leather, once it acquires title, once it makes this purchase in Argentina, decides to then ship them to China. That doesn't give rise to jurisdiction in China. It's just that fact. You want to isolate each one. And, you know, maybe you'll have, maybe if you go have a hearing, maybe there'll be some findings, and you'll succeed. But I don't know how we decide on this front. Well, Your Honor, and going back to your earlier statement, Judge Motz, with regard to these six visits, I would also point out that the statement with regard to these being employees of Quoro, that that is clearly hearsay, and for that reason should not be admissible. But, moreover, even if it were accepted as truth. I think there's a lot of law under 12b-2 that hearsay objection doesn't hold up. As I said, it doesn't even have to be verified. Judge Irvin explained that in 1986. You can just look at the complaint. You don't need any affidavits. Yes. But, you know, assume the credibility. I mean, they just went on and on. And I read that opinion I read out about 1997 from Judge Hamilton. And Judge Phillips of North Carolina was a member of the panel. I mean, that's consistently our precedent up to today. Now, maybe you can get it changed or seek to get it changed. But that seems to be what it is right now. And, Your Honor, again, with regard to that Dallas decision, I think that the language in that opinion is really going to whether there's been sufficient averments to trigger North Carolina's long-arm statute, which is a completely different issue as to whether the factors that this court has laid out in consulting engineering have been met. And when you go through those factors, there are precious few, if any, that work in favor of universal leather. The first factor is whether the defendant maintains offices or agents in the forum state. The undisputed evidence is that Coro has no offices either in North Carolina or anywhere else in the United States. In fact, the employee of Coro who visited the affidavit of Mr. Merlo makes clear that no employee or agent of Coro has visited the United States. But that's contrary to his affidavit. If you accept that, here's a statement. That's contrary to what we have to rely on the plaintiff's affidavit and assume their credibility. And again, you're right. And draw the most favorable inferences for the existence of jurisdiction. That's the law of the Fourth Circuit. And again, we take the position. And you've got an affidavit that said, no, they're all lying. And there was no evidentiary hearing held, and the judge made no findings of fact in that regard. So we've got to take the facts. The standard of review is really what your problem is here, I think. We've got to deal with it on the basis of the standard of review that's favorable to him, favorable to the other side. And again, Your Honor, we take issue as to whether Mr. Kitchakian can cause this lawsuit to continue to have life simply because of his here statements. But even so, the fact that he is saying there were passing visits to North Carolina after Universal Leather started purchasing leather in Argentina, we don't think that that's sufficient when you look at the various other factors under this Court's decision in consulting engineering. Again, Coro has no property in the United States. The second factor under consulting engineers is whether the defendant owns property in the forum state. Clearly, it is undisputed that Coro has no property in North Carolina or the United States. The third factor is whether the defendant reached to the forum state to solicit business. And even if you accept Mr. Kitchakian's here stay statements, it's not to solicit business. It's after Universal Leather first started purchasing leather from Coro in Argentina. The fourth factor is whether the defendant engaged in significant or long-term business activities in the forum state. That is the language of this Court's decision in consulting engineers. But here the business was done in Argentina. The goods were made in Argentina. They were acquired in Argentina. They were risk of loss entitled to those goods passed to Universal Leather in Argentina. This is an Argentine transaction, not a North Carolina transaction. The fifth factor under this Court's decision in consulting engineers is whether the parties contractually agreed that the law of the forum state would govern disputes. And here, as set out in our briefs, and as Universal Leather doesn't contest, the applicable law here would be the United Nations Convention on Contracts for the International Sale of Goods. That treaty is what governs, not North Carolina law. So it's undisputed that there is no contractual agreement that causes these purchases in Argentina to be governed by North Carolina law. The sixth factor is whether the defendant made in-person contact with the plaintiff in the forum state. And if you accept Mr. Kochekian's affidavit, there's some indication that that factor, that Universal Leather has put forward evidence on that factor. But that factor in and of itself is not dispositive when you're dealing with an Argentine transaction, the purchase of goods in Argentina, and title and risk of loss passing in Argentina. The seventh factor is the nature, quality, and extent of the parties' communications. And here, the plaintiff sent purchase orders to Argentina for the purchase of leather in Argentina. Koro then communicated with the plaintiff's agent on the ground in Argentina, an employee of Universal Leather by the name of Amar Puente. And so Universal Leather has a physical presence, an employee, in Argentina. That's set out in Mr. Kochekian's affidavit himself. And again, title to that leather passed in Argentina. And when that occurred, invoices were then sent to Universal Leather from Argentina. You're front and center on consulting engineers, right? Consulting engineers and those factors. There's nothing in consulting engineers that says that a plaintiff would have to demonstrate all of those factors. And indeed, I think it was the fact that the plaintiff hadn't demonstrated any of them that made the court, or at least very few of them. Because what the court says in the very beginning, after it lists the factors, we look to the quality and nature of the contact. And clearly that's consistent with prior Fourth Circuit law. And I don't even know that you would doubt that. So I'm not sure really where it gets you to say that some of the factors weren't in play here. Well, Your Honor, when you look at the factors, the only one that arguably cuts in favor of Universal Leather is if you take Mr. Kochekian's hearsay statement and say there were certain visits in North Carolina after... Hearsay can be used for this. You say it can't, but I say it can. You don't even need affidavits. You don't need affidavits. That's the law. At this stage, you haven't even had discovery, have you? No, Your Honor. That's right. You haven't even had discovery. We don't know what the facts are. We don't know what the facts are, so you take the facts in their favor. You take the facts in their favor. And they're entitled to support their complaint if they want to by affidavits. You're not entitled to contradict them because we have to assume their credibility. And, Your Honor, this panel can certainly say that. As set out in our briefs, we believe it would align the Fourth Circuit in conflict with various other circuits. But, again, my point is that... I'm sorry. What would put us in conflict? If hearsay could be used for purposes of personal jurisdiction. Uh-oh. We're not talking about at a hearing. We're talking about just the allegations in a complaint. And your submission is that the allegations in the plaintiff's complaint, if it's because they constitute hearsay, cannot be used to determine personal jurisdiction. Is that correct? Yes, Your Honor. And you think there's case law that says you can't use the allegations in the complaint because they're hearsay? Yes, Your Honor. When the plaintiff is put in a position of having to make a prima facie case of jurisdictional facts... Well, Your Honor, you can just allege it in your complaint if it's not contested. In this case, you have contested facts. Exactly. Conflicting facts. Thank you. That is the point I'm trying to get to. And what I'd like to ask you is then why wasn't your obligation to say to the judge, Judge, look, you know, before you go deciding this case, there are conflicting facts. Don't we need a hearing where you need to make some factual findings? Your Honor... I mean, really, wouldn't that have been the more logical step to take so that these things could be nailed down and, in fact, if Mr. Pacheco was incredible, that could be established in terms of an assessment by the trial judge? And, Your Honor, we did make that suggestion to the trial court. It's in the joint appendix. I don't have the site to that specific language. But, you know, the point is... Did the court turn you down? The district court judge proceeded to accept the recommendation, concluding that he didn't need it. He made that suggestion after the recommendation of the magistrate. Yes, Your Honor. Following it. Yes, but... Why didn't you ask for jurisdictional discovery? Why didn't you have jurisdictional discovery? I mean, that seems to me, and I agree with Judge Keene 100%, you could have an evidentiary hearing before the evidentiary hearing, you could have jurisdictional discovery, you could deal with all this stuff, and then a judge could make findings of fact, and then we view those for clear error. You've got the advantage on that. But you come up here on this stuff, the advantages are all with the plaintiff. Your Honor. Because you don't have any discovery. Your affidavits can't contradict his. We have to credit his complaint, his affidavit, and draw all the favorable inferences. It's the standard review. It's that situation that really bothers me that the thing's up here now. I mean, it might come back up later after you go back down. It would have all been better off had it taken care of earlier. Your Honor, the short answer is the district court concluded that even with the allegations of Mr. Pacheckian, there was still, the plaintiff had not met their prima facie case. Because this is an Argentine transaction. And you would be entitled, and that would be, we'd be entitled to affirm him on that basis. But you have to accept his facts and then argue it from his facts. You can't get up here and tell us that you can't contradict him. You can't come in and say $5 million is wrong, it's 2.8. You can't come in and say those fellows didn't work for Coro and they went up there to High Point because his affidavit says they did, or his complaint says they did. You have to give him the facts and then argue it from that standpoint. And if you would deal with that, your brief was all your facts. You've got to give him the facts. Your Honor, and I've seen my time is out, but just very briefly, when you construe the facts in favor of the plaintiff, universal leather, they still don't meet this court standard and the language that this court has set out in Consulting Engineers and so many other cases because this is an Argentine transaction. The sale was consummated in Argentina. And the fact that some of these shipments were made to North Carolina doesn't give rise to personal jurisdiction, nor do the various other things that Mr. Kachekian has alleged give rise to jurisdiction. As a result, we would ask that the decision of the district court be affirmed. Thank you. Your Honor, very briefly, we did point out in our brief that three of the Consulting Engineers' factors are present. First, the defendant did reach into the forum state to solicit business with these six visits. Secondly, that the defendant made in-person contact with a resident of the forum in the forum state regarding the business relationship six times. Thirdly, the nature, quality, and extent of the communications. Communications consisted of weekly emails. They're not replicated in the appendix, but there's affidavit that they existed. Weekly emails, and then with each shipment over a period of three years, we have purchase orders, invoices, and payments. So that is the nature, quality, and extent of communications. And the Consulting Engineers, the only communications that went in or out of the forum state were a handful of emails. Concerning the hearsay issue, I would like to stress that I think there are a couple of exceptions that probably take care of us. One is 801D2D, a statement by an agent in the course of his agency, because we can believe that they were an agent, and unless proved not, then that would be a non-hearsay. And secondly, you can have a state of mind under Rule 803, excuse me, 801.3, because here we have a person who's saying, I represent, or I am a part of Coro. But even more importantly, you can consider the affidavit of Pantene, who says that Coro and Pantene agreed that Pantene would facilitate Coro's sale of leather to Universal Leather. All of the cases of this court that I've tried to read, the ones we've talked about and the ones we haven't talked about, seem to support us. In CFA Institute, defendant made contact with plaintiff, visited the forum state, resulted in an ongoing business relationship, jurisdiction was upheld. We have these stream of commerce cases that are related to the Supreme Court's Asahi case that the defendant relies upon, but they're just that. They're goods that are manufactured somewhere abroad with the thought that maybe someone will end up in North Carolina or Maryland or Virginia, and lo and behold, they do. Well, that's not enough, but here we have an entirely different thing. We have a directed course of communications and transfer of goods taking place over three years with 200 times. So the stream of commerce cases just don't get you there. Cases like federal insurance where you have a ship's winch that malfunctions in Charleston and you go after a Wisconsin and Michigan design firm who've never done business in Charleston. Or Lesnick, the cigarette filter material case manufactured in Massachusetts and sold to Lorillard, and then somebody gets sick in Maryland. So we think for all of the reasons that are expressed in our brief and for the reasons that we've summarized in this argument, that we're entitled to have this matter reversed and sent back and be happy to answer any further questions. I don't think we have any questions. Okay, thanks. Thank you very much. I'll ask the clerk to adjourn court and then we'll come down and brief.
judges: Diana Gribbon Motz, Robert B. King, Barbara Milano Keenan